ENRIQUE UBARRI CASALS, Plaintiff and Appellee, *v.* FEDERICO CALAF, Defendant and Appellant.

No. 5510.   Argued February 18, 1932.—Decided December 21, 1932.

*Leopoldo Feliú* (*Feliú & La Costa* on the brief) for appellant.
*R. H. Blondet* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

In April, 1911, Enrique Ubarri conveyed to José Acosta y López for a lump sum two properties. One was a parcel of 110 acres (*cuerdas*) bounded on the north by Susana García and Quintín García, on the south by Octavio García Salgado, on the east by "the river", and on the west by the old road to Caguas. The other was twenty *cuerdas,* known as Vega Larga, bounded on the north by Susana García, on the east by Ramón Rodríguez and the Heirs of Ramón Trigo, on the south by Leonardo Calvo, and on the west by the road to Caguas. Both were in the ward of Monacillo, Municipality

of Río Piedras.  In March, 1913, Acosta conveyed both of these properties to Tiburcio Antuñano also for a lump sum. In May, 1926, Acosta and Ubarri set forth in a notarial instrument that a survey of the two properties made for the purpose of selling the same to Antuñano had disclosed a total of 115 *cuerdas* only instead of 130, and that the sale was made subject to a stipulation whereby Acosta reserved the right to claim and recover the difference in area as soon as the same could be located by a survey of the two parcels and of the adjoining properties.  Acosta then sold his right of action to Ubarri.  In July of the same year Antuñano in a public instrument acknowledged that Acosta had reserved the right to recover from adjoining property owners the shortage disclosed by a survey of the two properties and that the purchase price had been reduced accordingly.  Antuñano then transferred whatever right of action he might have acquired as to the said difference in area to Ubarri as assignee of Acosta.  In October of the same year Federico Calaf purchased from José Ramírez twenty *cuerdas* of land in the ward of Monacillo, Río Piedras, bounded on the north by the old road from Río Piedras to Caguas and by Susana García, on the south by Leonardo Calvo and a brook without name, on the east by Susana García and on the west by Leonardo Calvo. The instrument recites that Ramírez had acquired this property in April, 1926, from the spouses Fernández-Escudero.  In October, 1928, Ubarri brought the present action to recover from Calaf seven and 99-hundredths *cuerdas* bounded on the north by the Río Piedras municipal road, on the east by property belonging to Federico Calaf, formerly owned by Blanca Fernández, on the south by a brook beyond which lies property belonging to Tiburcio Antuñano, formerly to Enrique Ubarri, and on the west by lands of Tiburcio Antuñano, formerly owned by Enrique Ubarri.  In a preliminary proceeding the district court, in April, 1928, had ordered Calaf to permit an entry and survey of his property by Ubarri.

Ramón Díaz Morales, a surveyor, testified at the trial of the instant case that a blue print exhibited by counsel for plaintiff was a plat of a property near Río Piedras; that witness went to the property and surveyed it; that Pepe Escudero, husband of Blanca Fernández, pointed out the boundaries to witness; that Mr. Canino, of the Central Vannina, and another man whose name witness did not remember were present; that the central was an adjoining owner on the east; that the plat was made in 1926. The plat was then admitted in evidence over the objection of defendant, who took an exception. The stenographic record does not show that it was marked for identification at that time. A blue print marked exhibit "J" for plaintiff purports to be a plat of land owned by Blanca Fernández de Escudero. The names of adjoining land owners as they appear on this plat are on the north and east Susana García, now Central Vannina, on the south and east Leonardo Calvo, now Tiburcio Antuñano. On the west or northwest, running in a northeasterly direction there is a road described as "the old road from Río Piedras to Caguas." On the southeast is a brook. The area of the property is given as twenty-seven and ninety-nine hundredths *cuerdas*. The plat is dated January 31, 1926, and signed by Aniceto Díaz Hernández, licensed surveyor.

The witness Díaz Morales also identified another plat as representing a survey of "the same property" made by witness at the instance of Ubarri, April 27, 1928. This plat was also admitted in evidence over the objection of defendant and marked exhibit "K" for plaintiff. It is entitled "Plat of lands situated in the ward of Monacillo, within the jurisdiction of Río Piedras." There is a straight line running in a southeasterly direction from a point in the road on the northwest (here described as Camino Municipal de Río Piedras) to another point in the brook on the south which forms the eastern part of the southern boundary. The portion to

the northeast of this dividing line is marked twenty *cuerdas*. The portion to the southwest of this line is marked seven and 99-hundredths *cuerdas*. Below is a certificate which reads in part: "At the request of Enrique Ubarri, I measured a piece of property situated in the ward of Monacillo, Municipality of Río Piedras, composed of twenty-seven and ninety-nine hundredths *cuerdas,* which property I divided into two parcels of land, one of twenty *cuerdas* and the other of seven and ninety-nine hundredths *cuerdas* . . . . . . as appears from the accompanying plat.—Trujillo Alto, Puerto Rico, April 27, 1928. Ramón Díaz Morales, Surveyor.''

Ubarri testified that he instituted a proceeding for a survey; that the court ordered a survey of the twenty *cuerdas* belonging to Federico Calaf; that witness commissioned Ramón Díaz to make the survey; that witness was present; that Mr. La Costa was also present as a representative of Federico Calaf; that the survey was made after the order of the court, in 1928; that witness had previously ordered a survey of the 117 *cuerdas* and had commissioned Luis Vilá for the purpose; that witness was present and that Antuñano was notified.

Luis Vilá Andino identified another blue print as the plat of a property formerly owned by Ubarri which witness had surveyed at Ubarri's request; that there was no opposition; that an overseer of the property adjoining Ubarri on the north was present as the representative of Calaf and did not object; and that witness did not remember who else was present. The blue print was then admitted in evidence over defendant's objection and marked exhibit "L". The surveyor's certificate refers to the property as that of Enrique Ubarri in the ward of Monacillo, Municipality of Río Piedras. The area is given as 117 and sixty-eight hundredths *cuerdas* and reference is made to fifteen *cuerdas* as having been sold to José Manuel Acosta. A portion of the property near the eastern boundary is marked Vega Larga. There is

no dividing line between the portion so marked and the rest of the property. The whole appears to be bounded on the north and on the south by F. Calaf, on the east by the "Río Piedras", and on the west by "the old road to Río Piedras." Alongside this road there is an arrow pointing southward toward Caguas. One half or more of the southern boundary, measured from the Río Piedras is marked by what is called a *caño*. About three-fourths of the northern boundary is also marked by a brook said to be without name which flows in an easterly direction toward the Río Piedras. The other one-fourth of the northern boundary is marked by a straight line running in a southeasterly direction from a point in the old road to Río Piedras to another point in the brook.

It may be conceded, for the sake of argument, that the parcel of land sold to Federico Calaf in October, 1926, by Ramírez and said to have been acquired by him in the preceding April from "the spouses Fernández-Escudero" is the same parcel surveyed by Aniceto Díaz Hernández, January 31, 1926, as the property of Doña Blanca Fernández de Escudero. It may be conceded that the three plats were admissible without further preliminary investigation, explanation and identification. It may be further conceded that, as far as they go, they are presumptively correct. It does not follow that plaintiff is entitled to recover from defendant the seven and 99-hundredths *cuerdas* described in the complaint.

The burden was upon plaintiff to establish his title to the seven and 99-hundredths *cuerdas* in controversy. He must recover, if at all, upon the strength of his own title. He can not rely upon the fact that defendant was found to be in possession of a few *cuerdas* in excess of the area specified in his title papers.

Plaintiff was, of course, in constructive possession of all the land included within the boundaries specified in his title papers. Both of the properties formerly owned and sold by him are described in the deeds as bounded, on the north and

on the south by adjoining owners. The seven and 99-hundredths *cuerdas,* lying to the north at a point where there is no mention in the plats or elsewhere of any natural boundary, are not shown to be, nor to have been at any time, within the boundaries indicated in plaintiff's deeds. There was no satisfactory evidence as to plaintiff's prior possession, constructive or otherwise, of these seven and 99-hundredths *cuerdas.*

The three plats do not establish plaintiff's title to the seven and 99-hundredths *cuerdas.* The surveyor who surveyed defendant's property and (by running a line from a point in the road on the west to another in the brook on the south) divided that property into two parcels, one of twenty, and another of seven and 99-hundredths *cuerdas,* was not appointed by the court. Much less was he made an arbiter clothed with authority to establish the true boundary line between the property of plaintiff and that of defendant. He made no return or report of his work to the court. He did not explain at the trial how his work was done, nor why the dividing line was drawn as indicated on the plat. The only reason disclosed by the record for attempting to segregate any portion of the land found in the possession of defendant is that he was in possession of twenty-seven and 99-hundredths *cuerdas* while his deeds called for twenty *cuerdas* only, and plaintiff possessed one hundred and seventeen and 68-hundredths *cuerdas* only under deeds to two separate parcels which called for a total acreage of 130 *cuerdas.* There is nothing to show that the two parcels owned by plaintiff were separately surveyed. For ought that appears from the record the whole of plaintiff's shortage may have been in the 110-*cuerdas* tract. There is no satisfactory showing that the area of plaintiff's twenty acre parcel was incomplete. Yet the seven and 99-hundredths *cuerdas* which plaintiff seeks to recover from defendant lie to the north of plaintiff's twenty *cuerdas.* The judgment for plaintiff if permitted to stand, would take from defendant several *cuer-*

*das* of land and annex the same to an adjoining parcel belonging to plaintiff the area of which may or may not be already complete upon the theory that the owner of a number of contiguous parcels of land by simply showing a shortage in his total acreage may recover from any adjoining landowner up to the amount of such shortage any excess found in the possession of such adjoining owner over and above the number of acres specified in his title papers.

We have not overlooked the fact already stated that the surveyor who made the plat of plaintiff's property placed the twenty-*cuerdas* parcel known as Vega Larga to the east adjoining the river "Río Piedras." The same surveyor, to repeat in passing, refers in his certificate endorsed on the plat to a sale by Ubarri to Acosta of fifteen *cuerdas* out of the 117 surveyed said to be contained within the boundary of the plat. There is no other evidence of any such sale nor was there any explanation at the trial as to why Vega Larga was marked on the plat as a part of the eastern portion of the 117 *cuerdas*. Plaintiff's deeds on the other hand, as we have also already shown, describe the twenty-*cuerdas* parcel as bounded on the east by Ramón Rodríguez and the Heirs of Ramón Trigo, and on the west by the road to Caguas. They also describe the 110 *cuerdas* as bounded on the east by the river and on the west by the old road to Caguas. Thus, both properties appear to be bounded on the west by the road to Caguas and on the north (the twenty *cuerdas* entirely and the 110 *cuerdas* in part) by Susana García. One of them only, the 110 *cuerdas*, is bounded on the east by the river. Hence, our conclusion, *supra*, that the seven and 99-hundredths *cuerdas* in controversy adjoins plaintiff's twenty-*cuerdas* parcel on the north.

The judgment appealed from will be reversed and the case dismissed.

Mr. Justice Córdova Dávila took no part in the decision of this case.